UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| Adrian Wright, | ) |
| Plaintiff, | ) |
| v. | ) No.   4:15-cv-659 |
| City of Pine Lawn, Missouri, | ) **JURY TRIAL DEMANDED** |
| Sylvester Caldwell, in his individual capacity, and | ) |
| Jarred Anderson, in his individual capacity, | ) |
| Defendants. | ) |

## COMPLAINT

### *Introduction*

1. Adrian Wright is the victim of a conspiracy, headed by Sylvester Caldwell, who was, at all relevant times, Mayor of the City of Pine Lawn, Missouri, that violated Wright's First, Fourth, and Fourteenth Amendment rights. In retaliation for Wright's expressive activity criticizing Caldwell's actions as Mayor, including Caldwell's use of his office for criminal activity, Wright was targeted by the Pine Lawn police, falsely accused of municipal ordinance violations, arrested, and verbally threatened and abused. Moreover, as part of the conspiracy, city officials ensured that Plaintiff's "perp walk" on municipal charges was recorded for broadcast on television, and Caldwell later published Wright's resulting mug shot in campaign literature for the purpose of falsely portraying Wright as a criminal and discrediting Wright's endorsement of Caldwell's opponent.

*Jurisdiction and Venue*

2. This action arises under the Constitution of the United States and the provisions of 42 U.S.C. § 1983.

3. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343(a).

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in St. Louis County, Missouri.

5. Venue is proper in the Eastern Division pursuant to E.D. Mo. L.R. 2.07(A)(1).

*Parties*

6. Plaintiff, Adrian Wright, is a resident and citizen of Pine Lawn, Missouri.

7. Defendant City of Pine Lawn, Missouri, is a political subdivision of the State of Missouri located in St. Louis County.

8. Defendant Sylvester Caldwell was, at all times relevant to this complaint, the Mayor of the City of Pine Lawn. He is sued in his individual capacity only.

9. Defendant Jarred Anderson was, at all times relevant to this complaint, a police officer for the City of Pine Lawn. He is sued in his individual capacity only.

10. Defendants acted under color of state law at all times relevant to this complaint.

*Facts*

11. Plaintiff has previously served the City of Pine Lawn both as an alderman and as mayor.

12. Plaintiff is, and at all relevant times was, actively involved in Pine Lawn's politics because he cares deeply about the citizens and community of Pine Lawn. He is a member of a concerned citizens group that regularly attends city council meetings.

13. Plaintiff is well-known in the Pine Lawn community as a vocal critic of Caldwell.

14. The City of Pine Lawn has no chief of police.

15. At all times relevant to this complaint, Caldwell acted as Pine Lawn's de facto Chief of Police.

16. The mayor of Pine Lawn, in conjunction with Pine Lawn's city administrator and prosecutor, create policies for the police department.

17. On April 13, 2012, Wright was driving to his home in Pine Lawn.

18. Plaintiff came to a complete stop at the intersection of Penrose and Philbrook, which is located in Pine Lawn and marked as a three-way stop.

19. Thereafter, Wright proceeded through the intersection and to his home, which is 128 feet from the intersection.

20. When Wright reached his home, he pulled into his driveway.

21. Wright exited his vehicle.

22. As Wright exited his vehicle, Defendant Jarred Anderson appeared. He began screaming expletives at Wright and falsely accused Wright of running the stop sign at the intersection of Penrose and Philbrook.

23. This was the first time that Wright noticed Anderson or his squad car.

24. Wright informed Anderson that he had not, in fact, run the stop sign at the intersection of Penrose and Philbrook.

25. Wright was aware that the police in the City of Pine Lawn frequently hassled residents, so he informed Anderson that Wright had his license and registration available if Anderson would like to write him a citation.

26. Anderson told Wright to get on the ground.

27. As a result of his advanced age and physical limitations, Wright was unable to get on the ground and informed Anderson of this fact.

28. Anderson then un-holstered his Taser and threatened to tase Wright if he did not get on the ground.

29. Wright again advised Anderson that Wright could not get on the ground.

30. Anderson re-holstered his Taser and approached Wright.

31. Anderson then placed Wright in handcuffs.

32. As Anderson was handcuffing Wright, other officers arrived at the scene.

33. Anderson put Wright into the back seat of his squad car and took him to the Pine Lawn police station for booking.

34. At the station, Anderson wrote Wright municipal citations accusing him of: (1) failure to stop at a stop sign, (2) failure to yield to an emergency vehicle, (3) resisting arrest, (4) obstructing justice, and (5) assault of a police officer.

35. Wright did not fail to stop at a stop sign.

36. Anderson had no reason to believe that Wright had failed to stop at a stop sign.

37. Wright did not fail to yield to an emergency vehicle.

38. Anderson had no reason to believe that Wright had failed to yield to an emergency vehicle.

39. Wright did not resist arrest.

40. Anderson had no reason to believe that Wright had resisted arrest.

41. Wright did not obstruct justice.

42. Anderson had no reason to believe that Wright had obstructed justice.

43. Wright did not assault a police officer.

44. Anderson had no reason to believe that Wright had assaulted a police officer.

45. Wright's bond was set at $750.

46. Wright was held in jail for two hours before being released from custody.

47. As Wright was leaving the station, a news crew from KMOV filmed him. The news crew was accompanied by Caldwell.

48. The footage of Wright exiting the Pine Lawn police station after his arrest was broadcast on KMOV's nightly newscast alongside the headline "Former Pine Lawn mayor arrested on multiple charges."

49. KMOV also published an article regarding Wright's arrest online. In it, KMOV cites police sources in alleging that Wright "threw a punch at an officer who told him he was under arrest."

50. Wright endorsed Nakisha Ford in the 2013 mayoral election. Ford was running against the incumbent, Caldwell.

51. In March 2013, Caldwell published an edition of his newspaper entitled *The Pine Lawn Evening World*.

52. In the March 2013 edition of *The Pine Lawn Evening World*, there is a headline stating "Ex-Mayor Arrested for Assault!" Under the headline, Caldwell writes "This 'Bitter Bunch' associate was then arrested and booked on multiple charges. Later on, his wife and son showed up at the Pine Lawn Police Station to get him out of jail. Ironically, his wife is now trying to run for a seat on the Board of Alderman [*sic*] in Pine Lawn. Let's hope she does not rely on her bitter and angry husband for political advice or guidance. Just imagine another Wright in city government...that just seems WRONG."

53. Accompanying the article in the March 2013 edition of *The Pine Lawn Evening World* was Wright's mug shot from his arrest on April 13, 2012.

54. The "Bitter Bunch" is a name that Caldwell coined for his political opponents.

55. Ford is also a member of the group of Caldwell critics that Caldwell designated the "Bitter Bunch."

56. Caldwell orchestrated the arrest of Ford in 2013.

57. Caldwell instructed Lt. Steven Blakeney, then the highest-ranking law enforcement officer in Pine Lawn, to intimidate and instruct Akram Samed, manager of the Pine Lawn Food Market, to falsely claim that Ford had illegally taken one of Caldwell's campaign signs. Blakeney subsequently returned to the store to take a report from Samed, which resulted in Ford's arrest.

58. An article defaming Ford, which included discussing this arrest, was also published in the March 2013 edition of *The Pine Lawn Evening World*.

59. Caldwell utilized Pine Lawn's police department and its officers, including Anderson and Blakeney, to harass political opponents and to falsely arrest political opponents so that their arrests could be used to discredit their opposition to Caldwell.

60. Wright retained an attorney for the municipal cases stemming from the incident on April 13, 2012.

61. Wright's attorney asked for and received a recommendation from the City of Pine Lawn prosecuting attorney for settlement of Wright's municipal charges.

62. The prosecuting attorney's recommendation was to amend most of the charges against Wright to minor, non-moving violations and to dismiss the assault of a police officer and

obstruction of justice charges. However, the recommendation would have required Wright to pay $549.00 in fines and costs.

63. Wright declined the recommendation and elected to proceed to trial in the circuit court.

64. The City failed to appear for trial, and, on October 4, 2012, the charges were dismissed for failure to prosecute.

65. Thereafter, the same charges were re-filed by Pine Lawn—with Wright again arrested and required to post bond and hire an attorney—before the charges were again dismissed by the circuit court on March 21, 2013.

66. The same charges were reinstated again before ultimately being dismissed in Pine Lawn Municipal Court on August 12, 2013.

67. All charges arising from the April 13, 2012 incident have been resolved in Wright's favor by being dismissed (three times).

68. At all times relevant, Pine Lawn had a custom of falsely arresting residents—particularly vocal opponents of Caldwell—for municipal violations and then failing to prosecute those arrested.

69. At all times relevant, it was the custom of Pine Lawn and Caldwell to use the existence of unwarranted municipal charges and the corresponding mug shots in Caldwell's political newspaper, *The Pine Lawn Evening World*, to discredit his political opponents.

**COUNT I**
*42 U.S.C. § 1983 – First Amendment Retaliation*
*Against Defendants Anderson and Caldwell*

70. Plaintiff incorporates herein by reference the allegations made in each preceding paragraph as if each were set forth here verbatim.

71. Plaintiff engaged in political speech and other expressive activity critical of Caldwell.

72. Plaintiff's speech and expressive activity is protected by the First Amendment.

73. The arrests and charges against Plaintiff described in this complaint were caused by Caldwell's retaliatory animus toward Plaintiff's expressive activity.

74. The arrests and charges against Plaintiff described in this complaint served no lawful purpose.

75. Defendants caused Plaintiff to be arrested and charged without cause to believe that Plaintiff had committed any crime in retaliation for Plaintiff's expressive activity.

WHEREFORE, Plaintiff prays this Court:

    A. Enter judgment in favor of Plaintiff and against Defendants Anderson and Caldwell;

    B. Award Plaintiff compensatory and punitive damages against Defendants Anderson and Caldwell for the violation of Plaintiff's constitutional rights under color of state law;

    C. Award Plaintiff reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable provisions of law; and

    D. Allow such other and further relief as the Court deems just and proper.

**COUNT II**
*42 U.S.C. § 1983 – Fourth Amendment*
*Against Defendant Anderson*

76. Plaintiff incorporates herein by reference the allegations made in each preceding paragraph as if each were set forth here verbatim.

77. Defendant Anderson violated Plaintiff's clearly established right under the Fourth Amendment to be free from unlawful searches and seizures when he arrested and detained Plaintiff on April 13, 2012, and caused him to be falsely charged, re-charged,

and re-charged again by making false allegations against Plaintiff, all without probable cause to believe that Plaintiff had engaged in criminal activity or committed any crime.

78. Defendant Anderson engaged in these actions willfully, knowingly, and with deliberate indifference to Plaintiff's rights under the Fourth Amendment.

79. As a direct and proximate cause of Defendant Anderson's unlawful actions, Plaintiff was damaged.

WHEREFORE, Plaintiff prays this Court:

    A. Enter judgment in favor of Plaintiff and against Defendant Anderson;

    B. Award Plaintiff compensatory and punitive damages against Defendant Anderson for violation of Plaintiff's constitutional rights under color of state law;

    C. Award Plaintiff reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable provisions of law; and

    D. Allow such other and further relief as the Court deems just and proper.

**COUNT III**
*42 U.S.C. § 1983 – Conspiracy*
*Against Defendants Caldwell and Anderson*

80. Plaintiff incorporates herein by reference the allegations made in each preceding paragraph as if each were set forth here verbatim.

81. Defendant Caldwell and Defendant Anderson conspired for the purposes of retaliating against Plaintiff for exercising his rights under the First Amendment and depriving Plaintiff of his right under the Fourth Amendment to be free from unlawful search and seizure.

82. In furtherance of this conspiracy, Defendant Anderson pretextually and unlawfully arrested Plaintiff and initiated municipal charges against him.

83. Plaintiff suffered a deprivation of his rights under both the First and Fourth Amendments as a consequence of the conspiracy between Defendants Caldwell and Anderson.

84. As a direct and proximate cause of the unlawful actions of Defendants Caldwell and Anderson, Plaintiff suffered damages.

WHEREFORE, Plaintiff prays this Court:

   A. Enter judgment in favor of Plaintiff and against Defendants Caldwell and Anderson;

   B. Award Plaintiff compensatory and punitive damages against Defendants Caldwell and Anderson for violation of Plaintiff's constitutional rights under color of state law;

   C. Award Plaintiff reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable provisions of law; and

   D. Allow such other and further relief as the Court deems just and proper.

### COUNT IV
*42 U.S.C. § 1983 – Municipal Liability*
*Against Defendant City of Pine Lawn*

85. Plaintiff incorporates herein by reference the allegations made in each preceding paragraph as if each were set forth here verbatim.

86. At all times relevant to this complaint, Defendant Caldwell was a final policy maker for the City of Pine Lawn and Pine Lawn's police department.

87. At all times relevant to this complaint and prior to April 13, 2012, the City of Pine Lawn developed and maintained policies, customs, and practices exhibiting deliberate

indifference to the constitutional rights of persons in Pine Lawn, which caused the violation of Plaintiff's rights.

88. With deliberate indifference to Plaintiff's constitutional rights, the City of Pine Lawn caused the policy or custom of unlawfully arresting Pine Lawn residents and issuing them municipal citations by implementing, enforcing, adopting, sanctioning and ratifying a policy, practice, or custom of: (1) failing to properly screen, train, and supervise City of Pine Lawn police officers; (2) failing to adequately monitor and discipline City of Pine Lawn police officers for constitutional abuses; (3) encouraging, sanctioning, and failing to rectify the City of Pine Lawn police officers' constitutional abuses; and (4) utilizing the City of Pine Lawn's police department to harass and violate the constitutional rights of Caldwell's critics.

89. As a direct and proximate result of the aforesaid acts and omissions, Pine Lawn caused the deprivation of Plaintiff's rights under the First, Fourth, and Fourteenth Amendments.

90. Pine Lawn's policies, customs, and practices demonstrate a deliberate indifference to the constitutional rights of persons within the City of Pine Lawn and caused the violation of Plaintiff's rights alleged herein.

91. Plaintiff sustained damages as a result of Defendant City's policies, customs, and practices.

WHEREFORE, Plaintiff prays this Court:

    A. Enter judgment in favor of Plaintiff and against Defendant City of Pine Lawn;

    B. Issue an injunction requiring Defendant City of Pine Lawn to develop and implement adequate training programs for its police officers about rights

under the First, Fourth, and Fourteenth Amendments and such other equitable relief as is warranted;

C. Award Plaintiff compensatory damages against Defendant City of Pine Lawn for its violation of Plaintiff's constitutional rights under color of state law;

D. Award Plaintiff reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable provisions of law; and

E. Allow such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ Anthony E. Rothert
ANTHONY E. ROTHERT, #44827MO
ANDREW MCNULTY, #67138MO
ACLU of Missouri Foundation
454 Whittier Street
St. Louis, Missouri 63108
Phone: (314) 652-3114
Fax: (314) 652-3112
trothert@aclu-mo.org

GILLIAN R. WILCOX, #61278MO
ACLU of Missouri Foundation
3601 Main Street
Kansas City, Missouri 64111
Phone: (816) 470-9938
gwilcox@aclu-mo.org

ATTORNEYS FOR PLAINTIFF